# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**FILED**
Dec 01, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| VANIS HENSON | ) | Case No. 5:25-mj-00093-CDB |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **November 29, 2025** in the county of **Inyo** in the
**Eastern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 13 assimilating CA Penal Code § 273.6(a) | Violation of a Court Order: Protective Order or Stay Away Order-- Maximum Penalties: Not more than 1 year incarceration, $1000 fine, or both imprisonment and fine, and up to 3 years probation |
| 36 C.F.R. § 2.1(a)(1)(iv) | Preservation of Natural, Cultural, and Archeological Resources-- Maximum Penalties: Not more than 6 months incarceration, $5000 fine, or both imprisonment and fine, up to 5 years probation, $10 specal assessment |

This criminal complaint is based on these facts:

See Affidavit of U.S. National Park Service Law Enforcement Officer Paul O'Donnell attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

PAUL O'DONNELL
Digitally signed by PAUL O'DONNELL
Date: 2025.11.30 15:02:11 -08'00'

*Complainant's signature*

Paul O'Donnell, U.S. National Park Service
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by email transmission and telephone.

Date: November 30, 2025

*Judge's signature*

City and state: Bakersfield, California    Hon. Christopher D. Baker, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Paul O'Donnell, being duly sworn, depose and state as follows:

## I. INTRODUCTION

1. I am a commissioned Law Enforcement Officer or Law Enforcement Ranger (hereinafter "Officer" or "Ranger") with the National Park Service. I have served in this role for three years and am currently based out of Death Valley National Park. As a ranger, I am authorized to investigate criminal violations under federal law on federally owned public land administered by the National Park Service. I was trained to conduct such investigations at the Federal Law Enforcement Training Center in Glynco, Georgia.

2. This Affidavit is made in support of a federal complaint for VANIS JAMES HENSON ("HENSON") for violation of a state court issued protective order, in violation of Title 18 United States Code, section 13 assimilating California Penal Code section 273.6(a) and 36 Code of Federal Regulations section 2.1(a)(1)(iv). The Affidavit is based on my training and experience as well as my personal knowledge and communications with other law enforcement. Because this affidavit is intended merely to show that there is probable cause for the complaint, it does not set forth all my knowledge about the case.

## II. APPLICABLE LAW

3. The Assimilative Crimes Act, 18 U.S.C. § 13, makes state law applicable to conduct occurring on lands reserved or acquired by the Federal government as provided in 18 U.S.C. § 7(3), when the act or omission is not made punishable by an enactment of Congress.

4. California Penal Code Section 273.6(a) states that any intentional and knowing violation of a protective order, as defined in Section 6218 of the Family Code, or of an order issued pursuant to Section 527.6, 527.8, or 527.85 of the Code of Civil Procedure, or Section 15657.03 of the Welfare and Institutions Code, is a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in a county jail for not more than one year, or by both that fine and imprisonment.

///
///

5. 36 Code of Federal Regulations Section 2.1(a)(1)(iv) states that except as otherwise provided in this chapter, possessing, destroying, injuring, defacing, removing, digging, or disturbing from its natural state a mineral resource or cave formation or the parts thereof is prohibited.

### III.  JURISDICTION

6. The facts set forth in this affidavit occurred within Death Valley National Park, within Inyo County, in the State and Eastern District of California.

7. Death Valley National Park is an area of federally owned public land administered by the National Park Service.

8. Death Valley National Park is an area within the special maritime and territorial jurisdiction of the United States within the meaning of Title 18, United States Code, Section 7(3). As stated in that subsection, any lands reserved or acquired for the use of the United States and under the "exclusive or concurrent jurisdiction" is considered an area within the special maritime and territorial jurisdiction of the United States.

### IV.  PROBABLE CAUSE

9. On November 29, 2025, at approximately 1:55 p.m., the staff at the Furnace Creek Visitor Center called the Cow Creek Ranger Station to report a car driving around the closed gate on Artist Drive. Artist drive has been closed since September 19, 2025, and has a closed gate on the entrance.

10. US Park Ranger Orbach notified me at 1:55 p.m., and I proceeded to Artist Drive. I responded to the junction of Artist Drive and Badwater and began driving south on Artist drive. At 2:13 p.m., approximately 3 miles from the exit, I found a silver 2025 Nissan Versa parked in the road with a man seated in the front passenger seat and a woman standing outside near the open driver's side door. I asked who the driver was, and the woman stated that she was the driver. The woman was identified through her California driver's license as W.H.H. I ran W.H.H.'s information through my dispatch and was advised that she was the protected party in a domestic violence protective order. I asked the man for his identification. The man was identified through an interim California driver's license as Vanis James HENSON. I ran HENSON's information through dispatch. Dispatch stated that HENSON was the named party in the domestic violence protective order.

11. I asked W.H.H. to come talk with me at my patrol car several yards away from HENSON

and told her that I found a protective order with her as the protected party and HENSON as the named party. W.H.H. said "it should be out by now." I told W.H.H. that the order was still in force. W.H.H. said that "we're married and back together and thought it was done." I asked W.H.H. if she had done anything to remove the order and she said that she had contacted Joshua Tree Courts. W.H.H. said they had been back together for 6 months. I asked W.H.H. if she was freely and willingly back in contact with HENSON and she stated that she was.

12. During a search of the vehicle, I noted multiple rocks that appeared to be from the park throughout the car. These rocks were in the door compartments on both side of the vehicle and on the rear seat floorboards. There were approximately six small rocks in each door compartment approximately one inch long. There were approximately twenty rocks on the rear seat floorboard ranging in size from approximately six to nine inches long. Based on my training and experience, including my familiarity with the area and terrain around which W.H.H. and HENSON were located, I recognized these rocks to be consistent with those in the area of the park surrounding the vehicle. W.H.H. and HENSON were sitting immediately next to one another at this point in time. I asked W.H.H. and HENSON about the rocks and W.H.H. said "we were rock collecting."

13. I requested dispatch to email me the protective order information at 2:26 p.m. I received an email at 2:51 p.m. containing a text document which the details of the protective order that had been inputted into the California Law Enforcement Telecommunications System ("CLETS"). CLETS is a database that stores and makes accessible to law enforcement dispatch centers information such as warrants, suspended driver's licenses, and protective orders. I reviewed the emailed CLETS information, which showed that the protective order was issued from San Bernadino County Superior Court. The CLETS document contained the conditions of the protective order, including that HENSON is restrained from making any communication with W.H.H., including but not limited to personal, written, or telephone contact. The CLETS information I received indicated that the order was served 10/24/2023. While on-scene, I was unable to find an expiration date in the text of the CLETS document. At 3:12 p.m., I called the San Bernardino County Superior Court phone number as listed on the protective order and confirmed that the protection order was still valid and would expire on 10/05/2026.

14. Given the violation of the protection order, I placed HENSON under arrest for violation of

said order at 4:53 p.m. I transported HENSON to Stovepipe Wells Ranger Station where I transferred him to Supervisory U.S. Park Ranger Yuki Buday and US Park Ranger Michelle Clark for transport to Lerdo Maximum-Medium Facility in Bakersfield.

## V. CONCLUSION

15. I submit the above-referenced facts establish probable cause to believe that HENSON violated Title 18 United States Code, section 13 assimilating California Penal Code section 273.6(a) and 36 Code of Federal Regulations section 2.1(a)(1)(iv). Therefore, I request that the Court issue a federal complaint and arrest warrant for him.

Respectfully submitted:

**PAUL O'DONNELL**
Digitally signed by PAUL O'DONNELL
Date: 2025.11.30 15:02:42 -08'00'

Paul O'Donnell
Law Enforcement Officer
National Park Service, Death Valley National Park

Approved as to form:

*Nicholas Karp*
Nicholas Enrico Karp
Assistant U.S. Attorney

Affidavit submitted by email and pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4(d) and 4.1 before me this ___30th___ day of November 2025:

Honorable Christopher D. Baker
United States Magistrate Judge

4